**IN THE UNITED STATES DISTRICT COURT** RECEIVED
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

2006 MAR 27  A 10: 05

CAROL ADAMS;

      Plaintiff,

vs.

1: 06cv 273· WKW

WYETH PHARMACEUTICALS, INC.; WYETH, INC.;

      Defendants,

**DEMAND FOR JURY TRIAL**

## COMPLAINT

### A. JURISDICTION

The Plaintiff is a citizen of a state different from the state of incorporation or principal place of business of every Defendant against which she asserts claims. Plaintiff's claims exceed the amount of Seventy-Five Thousand and 00/100's Dollars ($75,000.00), exclusive of interest and costs. Accordingly, this Court has jurisdiction over these claims and parties pursuant to 28 U.S.C.A. § 1332. (Diversity is "complete.")

### B. VENUE

Plaintiff chooses this venue, so it is proper as to her. Venue in the Northern District of Alabama is also proper with respect to every Defendant, because all reside in this district; e.g., every one is subject to personal jurisdiction in the Northern District of Alabama. 28 U.S.C.A. § 1391 (a) & (c).

hereto, Wyeth Pharmaceuticals, Inc., was engaged in the business of testing,

## C. JOINDER

Plaintiff asserts rights to relief severally, and those rights to relief arise out of the same transactions, occurrences, or series of transactions or occurrences. The rights to relief asserted by Plaintiff and against Defendants, are asserted jointly, severally, or in the alternative, and the rights to relief so asserted arise out of the same transactions, occurrences, or series of transactions or occurrences. Further, questions of law or fact common to all defendants will arise. For all these reasons, joinder of Plaintiff and Defendants is proper. Federal Rules of Civil Procedure 20(a).

## D. PARTIES

1.  Plaintiff, Carol Adams, is a citizen of Geneva County, Alabama, and is over the age of nineteen (19). Carol Adams took the drug Prempro.

2.  Defendant Wyeth Pharmaceuticals, Inc., is a Delaware corporation with its principal place of business at 500 Arcola Drive, Collegeville, Pennsylvania. At all times relevant hereto, Wyeth Pharmaceuticals, Inc., was duly authorized to conduct, transact, and do business in the state of Alabama and this district. At all times relevant hereto, Wyeth Pharmaceuticals, Inc., was engaged in the business of testing, manufacturing, labeling, marketing, distributing, promoting, and selling hormone therapy drugs, including Prempro. The authorized service agent for Wyeth

Pharmaceuticals, Inc., is Corporation Service Company, 2704 Commerce Drive, Harrisburg, Pennsylvania 17110.

3.    Defendant, Wyeth, Inc., is a Delaware corporation headquartered and with its principal place of business at 5 Giralda Farms, Madison, New Jersey.  At all times relevant hereto, Wyeth, Inc., was duly authorized to conduct, transact, and do business in the state of Alabama and this district. At all times relevant hereto, Wyeth, Inc., was engaged in the business of testing, manufacturing, labeling, marketing, distributing, promoting, and selling hormone therapy drugs, including Prempro.  The authorized service agent for Wyeth, Inc., is Prentice Hall Corp. Systems, 830 Bear Tavern Road, Trenton, New Jersey 08628.

1.    *ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE (AEMLD)*

   a.    Defendants are liable to the Plaintiff pursuant to the AEMLD. Defendants are in the business of manufacturing, distributing, and marketing hormone therapy drugs ("HTDs"). Defendants manufactured, distributed, and marketed HTDs which were in a defective condition, and unreasonably dangerous when applied to their intended use in the usual, foreseeable, and customary manner.  The Plaintiff, while consuming HTDs in the usual and customary manner, as such were intended to be used, were injured and damaged as a proximate result of Defendants placing the products on the market.  HTDs were

3

unreasonably dangerous at the time such were placed on the market by Defendants. HTDs, at the time of the Plaintiff's injuries and damages, they were in substantially the same condition as when marketed by Defendants.

b.     Regarding HTDs, Defendants negligently or wantonly failed to give reasonable and adequate warning of dangers known to Defendants, or which in the exercise of reasonable care should have been known to the Defendants, and which the Alabama Plaintiff could not obviously discover.

2.     *NEGLIGENCE*

Defendants are liable to the plaintiff, pursuant to the negligence laws of Alabama. Specifically:

a.     Defendants negligently, recklessly, or wantonly formulated, developed, manufactured, prepared, designed, marketed, researched, inspected, labeled, promoted, sold, and/or distributed the HTDs involved in the occurrence made the basis of Plaintiff's complaint.

b.     Defendants negligently, recklessly, or wantonly failed to conduct adequate pre-approval research and post-approval surveillance to establish the safety of long-term use of HTDs.

c.   Defendants negligently, recklessly, or wantonly failed to provide adequate training and information, including, but not limited to, the need for medical monitoring, adverse effects, and the possibility of becoming disabled, to healthcare providers for the appropriate use of HTDs prior to promoting and encouraging the sale of HTDs.

d.   Defendants, as the designers, manufacturers, sellers and/or distributors of HTDs, negligently, recklessly, or wantonly failed to warn the Plaintiff of the dangers associated with the use of HTDs.

e.   Defendants negligently, recklessly, or wantonly advised the Plaintiff and her prescribing physicians, with respect to both the indications for, and the risks and benefits of, HTDs ingestion.

3.   *BREACH OF WARRANTY (IMPLIED AND EXPRESS)*

Defendants are liable to the plaintiff, pursuant to the implied and express warranty laws of Alabama. Specifically:

a.   Defendants breached their implied warranty of merchantability; Defendants were merchants or sellers of HTDs. Defendants sold HTDs. HTDs were used by the Plaintiff for the ordinary purposes for which such products are used. HTDs were defective or unmerchantable; i.e., not fit for the ordinary purposes for which such products are used,

anticipated, or reasonably foreseeable. Defect or defects in the products proximately caused injury to the Plaintiff, who gave notice to Defendants within a reasonable time after they discovered the breach of warranty.

b.    Defendants breached their implied warranty of fitness; Defendants sold HTDs. At the time of the sale of HTDs, defendants knew, or had reason to know, of a particular purpose for which the products were to be used. At the time of the sale of HTDs to the Plaintiff, the Defendants knew or had reason to know that the Plaintiff was relying on the skill and judgment of Defendants to select or furnish a suitable product for the intended purpose. At the time of the sale of HTDs to the Plaintiff, Defendants exercised their skill and judgment in the selection of the product, and the Plaintiff relied on that selection. HTDs were used by the Plaintiff for the particular purpose for which selection had been made by Defendants. HTDs were not reasonably fit and suitable for the use for which they were selected. Failure of Defendants to select a product which was reasonably safe for its intended use, proximately caused injury to the Plaintiff, who gave notice to Defendants within a reasonable time after they discovered the breach of warranty.

c.    Defendants, through description, affirmation of fact, and promise relating to HTDs to the FDA, prescribing physicians, and the general

public, including the Plaintiff, expressly warranted that their products were both efficacious and safe for its intended use.

d.    These warranties came in the form of: (i) publicly-made written and verbal assurances of the safety and efficacy of HTDs by Defendants, (ii) press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create and increase demand for HTDs, which failed to warn of the risks inherent to the ingestion of hormone therapy; (iii) verbal assurances made by Defendants regarding hormone therapy, and the downplaying of any risk associated with HTDs; (iv) false and misleading written information supplied by Defendants, and published in the Physicians Desk Reference on an annual basis, upon which physicians were forced to rely in prescribing HTDs during the period of the Plaintiff's ingestion of HTDs, including, but not limited to, information relating the recommended duration of the use of the drugs; (v) promotional pamphlets and brochures published and distributed by Defendants and directed to consumers; and (vi) advertisements. The information referred to in this paragraph was disseminated by and at the direction of Defendants.

e.    At the time of these express warranties, Defendants had knowledge of the purposes for which HTDs were to be used and warranted them to be in all aspects safe, effective, and proper for such purposes. Defendants'

7

drugs do not conform to these express representations in that they are neither safe nor effective and their use produces serious adverse side effects. As such, Defendants' products were neither in conformity with the promises, descriptions or affirmations of fact made about these drugs nor adequately contained, packaged, labeled or fit for the ordinary purposes for which such goods are used.

f.    Defendants breached their express warranties to the Plaintiff in violation of the applicable provisions of the respective states' Uniform Commercial Code by: (a) manufacturing, marketing, packaging, labeling, and selling HTDs to the Plaintiff in such a way that misstated the risks of injury, without warning or disclosure thereof by package and label of such risks to the Plaintiff or her prescribing physicians or pharmacists, or without so modifying or excluding such express warranties; (b) manufacturing, marketing, packaging, labeling, and selling HTDs to the Plaintiff, which failed to treat the symptoms of menopause in a safe manner; and (c) manufacturing, marketing, packaging, labeling, and selling HTDs to the Plaintiff, thereby causing the Plaintiff serious physical injury and pain and suffering.

g.    Defendants were or should have been in possession of evidence demonstrating that HTDs caused serious side effects. Nevertheless, they

continued to market their products by providing false and misleading
information without regard to its safety and efficacy.

h.    Defendants' actions, as described above, were performed willfully,
intentionally, and with reckless disregard for the rights of the Plaintiff
and the public.

4.    *SUPPRESSION AND MISREPRESENTATION*

Defendants are liable to the plaintiff, pursuant to the suppression and misrepresentation
laws of Alabama.  Specifically:

a.    Defendants had a duty to provide accurate information regarding HTDs.
Defendants    willfully,    recklessly,    wantonly,    or    negligently
misrepresented the risks and benefits of taking HTDs. These
misrepresentations, stated or omitted from the labeling or otherwise,
were material and false.  In reliance thereon, the Plaintiff took HTDs
and were injured and damaged as a result of them.  Such reliance was to
their detriment.

b.    Defendants suppressed material facts.  The Defendants had a duty to
disclose these material facts to the Plaintiff and her prescribing
physicians.  This duty arose because Defendants had knowledge of the
facts suppressed, the Plaintiff and her prescribing physicians were
unaware of the facts, and Defendants actually or constructively knew

that the Plaintiffs and her prescribing physicians were unaware of such facts. Defendants, as manufacturers, marketers, and/or distributors of these prescription drugs had the responsibility to convey appropriate information regarding safety and had superior knowledge of these facts. While under duty to do so, they failed to adequately advise Plaintiffs and their prescribing physicians of HTDs' risks and benefits. As a result of the suppression of material facts, the Plaintiff and her prescribing physicians were unaware of the dangers associated with HTDs and the Plaintiff now suffer injuries.

c.     Defendants made representations regarding the cardiovascular and other health benefits of taking their estrogen drug, or of taking their progestin drug in combination with estrogen, in that they, in the exercise of reasonable care, should have known were false and misleading. In particular, the materials and information disseminated by Defendants falsely and deceptively misrepresented or suppressed material facts regarding HTDs, including, but not limited to the following:

1)     The presence and adequacy of pre-and post-marketing testing of HTDs and;
2)     The severity and frequency of adverse health effects caused by HTDs.

The suppression, and the misrepresentations upon which the Plaintiff reasonably relied, were detrimental to the Plaintiff.

5.    *CAUSATION*

The above-described conduct of Defendants was the proximate, probable, producing, and efficient cause of the injuries and damages to the Plaintiff, which are described below.

6.    *DAMAGES*

The above-described wrongful conduct of the Defendants combined and concurred, causing injuries and damages as follows:

A.    Plaintiff Carol Adams was permanently injured and damaged when she suffered breast cancer, or suffered an aggravation of her breast cancer causing it to become more aggressive. This Plaintiff is permanently disfigured. She has and will suffer physical injury, mental distress, and mental anguish. She has and will continue to incur medical and related expenses. She has lost the ability to earn income, and she has lost earnings.

B.    Carol Adams has any cause of action against any defendant which is barred by the applicable statute of limitations, also claim as damages the value of any such cause of action which became time-barred as a result of any defendant's suppression or misrepresentation.

WHEREFORE, premises considered, and with respect to the plaintiff: Plaintiff requests that the jury expected to hear her case render a verdict for Plaintiff and against each responsible Defendant, separately and severely, and that it award damages to her in an amount which will adequately compensate her for the injuries and damages sustained by Plaintiff due to any defendants' wrongful conduct, said amount far exceeding the amount stated in 28 U.S.C. § 1332(a), exclusive of interest and costs. Additionally, for the wanton, reckless or intentional conduct of any of the Defendants that contributed to cause injury to Plaintiff, Plaintiff requests that a verdict be rendered for punitive damages, separately and severally, in

11

an amount which will fully and completely accomplish the purposes of awarding such damages. Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict and that it also award Plaintiff interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

Tom Dutton
ASB-2059-U50T
Attorney for Plaintiff


Elisabeth French
ASB-3527-T81E
Attorney for Plaintiff

**Of Counsel:**

PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
1100 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
205-322-8880


## JURY DEMAND

Plaintiff hereby demands a trial by struck jury for all issues involved in this case.


Of Counsel for Plaintiff

**Plaintiff's Address**

Carol Adams
Post Office Box 131
Dothan, Alabama 36302

## SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:

Wyeth Pharmaceuticals, Inc.
c/o Corporation Service Company
2704 Commerce Drive
Harrisburg, Pennsylvania 17110

Wyeth Inc.
c/o Prentice Hall Corp Systems
830 Bear Tavern Rd
Trenton, New Jersey 08628